582 P.2d 728

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Johannes J. WOLFE, Defendant-Appellant.**

**No. 12575.**

Supreme Court of Idaho.

July 17, 1978.

John T. Ramstedt, Coeur d'Alene, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Arthur James Berry, Asst. Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

This is an appeal from a ten year sentence for first degree burglary. Johannes Wolfe pleaded guilty to the crime (I.C. § 18–1401) on July 28, 1976 and a presentence report was ordered. After this report was received by the district court, Wolfe was given a ten year sentence, the court retaining jurisdiction for 120 days pursuant to I.C. § 19–2601.

Wolfe was then sent to the North Idaho Correctional Institution (hereinafter NICI) at Cottonwood in accord with the recommendation of the presentence report.

At the end of the 120 day period, the faculty at NICI recommended that Wolfe remain there for another 60 days for further observation. A report to this effect was sent to the sentencing judge. Wolfe had been working on a logging crew at NICI, but had received mixed reviews concerning his potential for rehabilitation. The court did extend its retained jurisdiction for another 60 days, pursuant to I.C. § 19–2601.

During the second retained period, Wolfe was the subject of a disciplinary proceeding because he was caught in the female barracks. Based on this proceeding, the classification committee recommended to the sentencing judge that the retained jurisdiction be allowed to expire.

Upon receiving this report from NICI, the trial court did allow the retained jurisdiction to expire and Wolfe was sent to the state penitentiary to complete his sentence.

Wolfe appeals this sentence, challenging both the length of the sentence and the procedures used.

I.

We first address the length of the sentence, which is ten years at the state

penitentiary. This Court has stated the four objectives of criminal punishment as: (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrong doing. *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1957).

The ten year sentence was well within the fifteen year statutory maximum. I.C. § 18–1403. Therefore the sentence was not illegal.

■ Several factors are to be considered during the sentencing process.[1] Appellate review of a sentence is based on an abuse of discretion standard. *State v. Ogata*, 95 Idaho 309, 508 P.2d 141 (1973). Wolfe contends that ten years is an excessive sentence and therefore an abuse of discretion given the facts of the case. Wolfe raises issues which must be considered in reviewing this sentence.

■ "The authority of the reviewing court with respect to the sentence should specifically extend to review of: (i) the excessiveness of the sentence, having regard to the nature of the offense, the character of the offender, and the protection of the public interest. . . ." ABA Standards Relating to Appellate Review of Sentences at 11 (Approved Draft 1968).

■ This Court has long reviewed sentences, looking carefully at the record before the sentencing judge. Idaho judicial history is replete with examples of modified sentences. *State v. Adams*, 99 Idaho 75, 577 P.2d 1123, Released March 31, 1978 (see dissenting opinion of Bistline, J.). This history is in conformance with the purpose of appellate review:

> The general objectives of sentence review are:
> (i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
> (ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
> (iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
> (iv) to promote the development and application of criteria for sentencing which are both rational and just.

ABA Standards, *id.* at 7.

In light of this important duty, a review of the record is appropriate. Wolfe did have a criminal record, consisting of a conviction for possession of heroin in West Germany. In fact, Wolfe was expelled from West Germany because of his heroin addiction. Wolfe fled to West Germany while charges were pending against him in Coeur d'Alene concerning a barroom incident.

---

1. "The Supreme Court has stated that in fixing punishment for crime 'the law recognizes that the previous character, good or bad, of one convicted should be considered in fixing the punishment.' *State v. Weise*, 75 Idaho 404, 273 P.2d 97 (1954). On other occasions the Supreme Court has indicated that evidence concerning the perpetration of the crime and the age and background of the defendant should be considered. E.g., *State v. Powell*, 71 Idaho 131, 227 P.2d 582 (1951). Other considerations which the Supreme Court has indicated should be taken into account before sentencing and in determining whether to grant probation or not are as follows:

'(1) all the facts and circumstances surrounding the offense of which the defendant is convicted;
(2) whether the defendant is a first offender;
(3) the previous actions and character of the defendant;
(4) whether the defendant might reasonably be expected to be rehabilitated;
(5) whether it reasonably appears that the defendant will abide by the terms of the probation; and
(6) the interests of society in being protected from possible future criminal conduct of the defendant. *State v. Ogata*, 95 Idaho 309, 508 P.2d 141 (1973); *State v. Kauffman*, 94 Idaho 20, 480 P.2d 614 (1971); *State v. Gish*, 89 Idaho 334, 404 P.2d 595 (1965); *State v. Mitchell*, 77 Idaho 115, 289 P.2d 315 (1955).' *State v. Trowbridge*, 95 Idaho 640, 516 P.2d 362 (1973)." *State v. Mansfield*, 97 Idaho 138, 540 P.2d 800, fn. 1 (1975).

Wolfe was 25 years old at the time of the sentencing. The presentence report reflects a poor upbringing from a broken home. The prosecuting attorney also felt that Wolfe was not being fully cooperative in apprehending others involved in the burglary here. (Much of the stolen property was never recovered.)

In mitigation of this picture is Wolfe's explanations. He became addicted to heroin while he was in the Army in Vietnam. This is Wolfe's first felony offense in the United States. The record also indicates that Wolfe may have been under the influence of drugs and alcohol when he committed the burglary.

The prosecuting attorney opposed sending Wolfe to Cottonwood (NICI) and recommended a five year prison sentence. The sentencing judge imposed a ten year sentence, but left open the option of modifying that sentence. The general nature of the presentence report reflected a concern about Wolfe's attitude toward crime. The report characterized Wolfe as highly intelligent, but with serious motivational problems. This is reflected by his continuing drug addition.

In order to properly execute his judicial function as to the length and type of sentence, it was necessary for the sentencing judge to have more information about Wolfe's potential for rehabilitation. He chose to obtain this information by retaining jurisdiction over Wolfe and having him evaluated at NICI. Depending on the results of Wolfe's performance at NICI, the judge could well have put Wolfe on probation. The reasons why he did not are discussed in Part II of this opinion.

■ Given a review of the record and considering the facts the judge had before him, we cannot say the sentence imposed was excessive or an abuse of discretion.

## II.

Wolfe argues that the procedures used in sentencing him violated his rights under the due process clause. Idaho Const. art. 1, § 13; U.S.Const. amend. XIV.

Idaho Code § 19–2601 allows jurisdiction to be retained after the sentence is imposed. *State v. Ditmars,* 98 Idaho 472, 567 P.2d 17 (1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). This procedure is available to the sentencing judge for up to 180 days while the defendant is evaluated at NICI. This time period gives the defendant a chance to demonstrate his rehabilitation potential and gives trained correction officers a lengthy period in which to evaluate this potential. With the benefit of a report from NICI, the sentencing judge can modify the sentence imposed if the situation merits.

The importance of a comprehensive report from NICI is best understood given the uses for that report. A good report indicating rehabilitative potential may very well result in a suspended sentence and probation. This information is essential for the sentencing judge to fashion a proper sentence.

> The basic idea underlying a sentence to probation is very simple. Sentencing is in large part concerned with avoiding future crimes by helping the defendant learn to live productively in the community which he has offended against. Probation proceeds on the theory that the best way to pursue this goal is to orient the criminal sanction toward the community setting in those cases where it is compatible with the other objectives of sentencing. Other things being equal, the odds are that a given defendant will learn how to live successfully in the general community if he is dealt with in that community rather than shipped off to the artificial and atypical environment of an institution of confinement.

ABA Standards Relating to Probation at 1. (Approved Draft, 1970).

While providing an obvious advantage at rehabilitation, probation has other favorable benefits. "Among the arguments in favor of probation is the fact that the cost of supervising one person on probation or parole is approximately 86¢ per day, or $313.90 per year. The cost of holding one inmate in the State Correctional Complex is

$18.84 per day or $6,876.60 per year." Idaho Judges Sentencing Manual at 7.7–2.

"To the direct cost of maintaining a convict in prison must be added the indirect cost of welfare aid to support his family and the amount of lost tax revenue resulting in keeping him economically unproductive." Institute on Sentencing, 35 F.R.D. 487, 489.

This cost consideration has been shown a real factor in Idaho.

A further measure of value in working with offenders in the community rather than confining them is the amount of taxable income they earn, thus contributing to the community tax structure. Records indicate that the taxable income of all probationers and parolees being supervised by the Department of Probation and Parole totals $4,560,234 annually.

Idaho Law Enforcement Planning Commission, *Comprehensive Plan for Criminal Justice,* C–37 (1974).

The importance to the state of the decision whether to grant probation is shown by the above factors. Prisons are as notorious for breeding criminals as they are known for their rehabilitative benefits. "Too often a sentencing judge is faced with the Hobson's choice of a sentence to an overcrowded prison that is almost a guarantee that the defendant will emerge a more dangerous man than when he entered. . . ." ABA Standards Relating to Probation, *supra* at 2. *See generally,* D. Fogel, We Are the Living Proof (1975). Probation is a valuable tool to be used by the state in a battle against recidivism.

Probation is not only important to the state, it is also a coveted goal of the convicted. Probation can be an initial sign that society has not given up on an individual and that a criminal is still a member of that society.

Probation is a desirable position in appropriate cases because:

(i) it maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations of law;

(ii) it affirmatively promotes the rehabilitation of the offender by continuing normal community contacts;

(iii) it avoids the negative and frequently stultifying effects of confinement which often severely and unnecessarily complicate the reintegration of the offender into the community;

(iv) it greatly reduces the financial cost to the public treasury of an effective correctional system;

(v) it minimizes the impact of the conviction upon innocent dependents of the offender.

ABA Standards Relating to Probation, *supra* at 27.

To be sure, probation is not the same free status that non-criminals enjoy. Probation is allowed only under strict conditions and is closely supervised. In this case, had the hearing and recommendations at NICI found Wolfe a good candidate for probation, it is very conceivable that he would have been placed on probation.

■ The threshold question to be addressed is whether a sufficient interest exists in the procedure at NICI to warrant the application of procedural due process. Both the United States and Idaho Constitutions require due process before any deprivation of life, liberty, or property. Idaho Const. art. 1, § 13; U.S.Const. amend. XIV.

The number of due process decisions coming out of the federal courts has drastically increased in recent years. Since the landmark case of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), federal courts have extensively addressed what situations constitute a deprivation of liberty. *Morrissey* was a situation in which a prisoner out on parole had his parole revoked without a hearing. The court held that this was a deprivation of liberty to start the due process wheels rolling. Similarly, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), found probation revocation a situation deserving of some procedures. Both *Morrissey* and *Gagnon,* as elements of due process, re-

quired preliminary and final revocation hearings, notice to the parolee or probationer of any alleged violations, the opportunity to appear at these hearings and present evidence in his behalf, and a limited right to confront adverse witnesses.

Another milestone was reached by the United States Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In holding that a loss of "good time" in the Nebraska penal system is a sufficient deprivation of liberty to invoke due process, the Court laid out many guidelines. "We think a person's liberty is equally protected, even where the liberty itself is a statutory creation of the state. The touchstone of due process is protection of the individual against arbitrary action of government . . .." *Id.* at 558, 94 S.Ct. at 2976.

Equally enlightening is *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974), which discusses this question.

> The Board holds the key to the lock of the prison. It possesses the power to grant or deny conditional liberty. In the exercise of its broad discretion it makes judgments concerning the readiness of an inmate to conduct himself in a manner compatible with well-being of the community and himself. If the Board's decision is negative, the prisoner is deprived of conditional liberty. His interest accordingly is substantial.

*Id.* at 76, 511 F.2d at 1278.

The above language applies to what happens in Idaho. The sentencing judge in seeking more information as to how to best deal with the criminal, sentenced him to the Board of Correction to be studied and evaluated. The officials there hold a hearing and compile their recommendations into a report to be forwarded to the sentencing judge.

The judge is in a position of placing a great deal of trust in this report and the recommendations contained therein. In this case, the judge followed the report's recommendations both times; first to extend the retained jurisdiction and then to

let it expire without a modification of the sentence.

We hold that a prisoner, as well as the state, does have a substantial interest in the fairness of the due process used to determine his status. We address the procedures used also because the fairness here is extremely important to the effective functioning of the judiciary in the correctional process. The sentencing judge, as well as the convict, needs the full benefit of a procedure designed to paint an accurate rehabilitation picture.

"That the revocation of parole be justified and based on an accurate assessment of the facts is a critical matter to the State as well as the parolee . . .." *Wolff v. McDonnell, supra* 418 U.S. at 561, 94 S.Ct. at 2977.

In holding some form of due process does apply to these proceedings, we are continuing a trend of parallel Idaho and United States Supreme Court cases. Following the *Wolff* opinion came *Calkins v. May,* 97 Idaho 402, 545 P.2d 1008 (1976). In that case, this Court applied due process safeguards to prison disciplinary proceedings. Similarly, the United States Supreme Court recently affirmed the procedures required in the confinement of inmates in maximum security units for "administrative" reasons. *Enomoto v. Wright,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). That case, extensively citing *Wolff,* found the state had created a "liberty interest which is protected by due process." (Opinion of the three judge district court, 462 F.Supp. 397, at 402.) Like the Supreme Court in *Wright,* we distinguish the instant case from *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

*Meachum* held that inter-prison transfers do not require procedural due process. This is because the state has not created an interest in the prisoner being assigned to one prison as opposed to another. "Confinement in any of the State's institutions is within the normal limit or range of custody which the conviction has authorized the State to impose." *Id.* at 225,

96 S.Ct. at 2538. The instant case presents a much different situation. A hearing held at NICI is done for the benefit of the sentencing judge and not for the correctional officers at Cottonwood. As shown before, both the state and the prisoner have an interest in that report being accurate and fair.

Several Idaho cases point out this Court's concern with a fair and effective sentencing procedure. In *State v. Cornwall*, 95 Idaho 680, 518 P.2d 863 (1974), we explained the importance of a hearing on an application for probation.

Before passing judgment, the trial court must grant an applicant for probation a hearing, if he desires one, at which time the applicant must be afforded the opportunity to present evidence which supports his version of the facts, which shows that he is a proper subject for probation, and which rebuts any adverse evidence before the court.

*Id.* at 682–83, 518 P.2d at 865–66. Similarly, *State v. Moore*, 93 Idaho 14, 454 P.2d 51 (1969) addressed the value of a complete set of facts before the sentencing judge.

"[N]amely, the desire to acquire all relevant information about a particular defendant so that probation may be granted or that the punishment will fit the man and the crime and the desire to maintain standards of fairness in sentencing procedures." *Id.* at 16, 454 P.2d at 53.

"[T]his Court has insisted that certain procedures be followed in probation proceedings in order to insure the reliability and fairness of the conclusions drawn about the defendant's personality." *Id.* at 17, 454 P.2d at 54.

In an extensive dissertation on the importance of probation revocation hearings, *State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1967) sheds light on the issue of fairness and the need for all the facts.

This statutory policy demanding equitable judicial administration of probation becomes more evident upon review of the cases in which this court has resolved problems raised by hearing procedure concerning application for probation and its revocation.

Whenever it has considered procedural standards in hearings regarding applications to withhold judgment and place a defendant on probation, this court has decided, or said, that the applicant must have an opportunity to present his version of probative facts and to contest forcefully the validity of adverse evidence. Finding that a proper hearing had not been accorded a probation applicant, this court has remanded the following cases to the trial court with instructions to grant a significant hearing: *State v. Gish*, 87 Idaho 341, 393 P.2d 342 (1964); *State v. Freeman*, 85 Idaho 339, 379 P.2d 632 (1963); *State v. Mitchell*, 77 Idaho 115, 289 P.2d 315 (1955); *State v. Yockey*, 57 Idaho 497, 66 P.2d 111 (1937). Although finding it unnecessary to remand because of an insufficient hearing, the requirements of an adequate probation application hearing were discussed also in the following cases: (the hearing was found adequate in) *State v. Gish*, 89 Idaho 334, 404 P.2d 595 (1965) and *State v. Ellis*, 70 Idaho 417, 219 P.2d 953 (1950); (due to the determination of other issues, it became unnecessary to rule on the hearing's adequacy in) *State v. Grady*, 89 Idaho 204, 404 P.2d 347 (1965); *Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964); *State v. Moore*, 78 Idaho 359, 304 P.2d 1101 (1957); *State v. Owen*, 73 Idaho 394, 253 P.2d 203 (1953); *State v. O'Dell*, 71 Idaho 64, 225 P.2d 1020 (1950).

*Id.* at 476, 424 P.2d at 746.

The Court continued on:

From the foregoing cases, it is clear that a hearing regarding an application for probation must be conducted in a judicial manner. It is imperative that the hearing process "affords the defendants full opportunity to present evidence in their behalf." Otherwise, the trial judge might not be sufficiently informed to fulfill the obligation that he "must exercise this judicial discretion [to grant or refuse a probation application] in a lawful and legal manner . . . and grant or deny the same [the application]

in the exercise of a sound, legal discretion."

*Id.* at 477, 424 P.2d at 747.

In addition to *Childs,* several of the Federal Circuit Courts of Appeal have found a liberty interest protected by due process in the denial of parole or probation. *United States ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1974), *vacated as moot sub nom, Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *vacated as moot,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *United States ex rel. Richerson v. Wolff,* 525 F.2d 797 (7th Cir. 1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976).

Many opinions and law review articles have struggled to define exactly what process is due. This question is important to this Court because of the value of the retained jurisdiction to the entire judicial process in Idaho and because this method of retaining jurisdiction has not been addressed by other courts. The Idaho process most closely resembles the determination of a board to grant or deny parole.

Wolfe urges that the procedures required for a denial of probation should accrue here. *State v. Edelblute, supra.* The state responds that we have previously ruled that due process does not apply in the instant case. *State v. Ditmars, supra.* The state's position misreads the application of *Ditmars.* This Court there held that when the sentencing judge issues an order relinquishing retained jurisdiction, a hearing is not required, nor is the defendant entitled to

the assistance of counsel at that stage of the proceedings.

When the judge initially imposes a sentence, all of the constitutionally guaranteed rights accrue. *State v. Carver,* 94 Idaho 677, 496 P.2d 676 (1972); *Thomas v. Hunter,* 153 F.2d 834 (10th Cir. 1946). Thereafter, if the judge sentences the defendant to the custody of the State Board of Correction, he may retain jurisdiction, and ask for an evaluation of the prisoner by the Board of Correction so he can reconsider probation or parole, if the facts warrant it. I.C. § 19–2601. To ensure the fairness and completeness of the procedure, unique to Idaho,[2] some safeguards are necessary.

■ Before a report is sent back to the sentencing judge (pursuant to the retained jurisdiction of I.C. § 19–2601), certain procedures must be followed. The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge.

These minimal procedures will help ensure the report is as complete as possible and guarantee a basic fairness for both the prisoner and the sentencing judge. "The history of liberty has largely been the history of observance of procedural safeguards." *McNabb v. United States,* 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943).

2. A somewhat similar procedure is available to the federal courts under 18 U.S.C. § 4205 (1976). Under that statute a federal court can commit a defendant to the custody of the Attorney General for a prescribed "study." Although the federal procedure is different than Idaho's, the purpose is the same, to use a flexible sentencing statute as a means of compiling an accurate basis for sentencing. The United States Supreme Court has interpreted that statute as requiring a hearing, with counsel, before the judge finally sets sentence after receiving the report from the Bureau of Prisons. *United States v. Behrens,* 375 U.S. 162, 84

S.Ct. 295, 11 L.Ed.2d 234 (1963). "It is plain that as far as the sentence is concerned the original order entered under § 4208(b) is wholly tentative. That section merely provides that commitment of a defendant to the custody of the Attorney General 'shall be deemed to be for the maximum sentence,' but does not make that the final sentence." *Id.* at 164, 165, 84 S.Ct. at 296. Our opinion today adopts a similar due process idea, but applies it at a different time and place because under *Ditmars,* in Idaho, sentence is imposed initially and not when the retained jurisdiction expires.

■ From the record we have before us, it is unclear if these procedures were denied. Because this is an appeal from the sentence imposed, we have only the record the sentencing judge had, including a summary of the recommendations made by the NICI faculty. On appeal, error will not be presumed and the burden of proving error is on the appellant. *Close v. Rensink*, 95 Idaho 72, 501 P.2d 1383 (1972); *Weaver v. Sibbett*, 87 Idaho 387, 393 P.2d 601 (1964). Since there is no showing that due process was violated, the sentence is affirmed.

If Wolfe wishes to bring out additional facts, the Uniform Post-Conviction Procedure Act (I.C. § 19–4901 et seq.) is available. Under this statute, affidavits and other records can be made available so that Wolfe's claims can be properly considered in light of the foregoing discussion.

Affirmed.

SHEPARD, C. J., and McFADDEN, J., concur.

BISTLINE, Justice, specially concurring.

When *Ditmars* was before the court I concurred on my understanding that the court was there holding that probation was not involved in a district court's retention of 120 days jurisdiction in passing sentence. Months later in a subsequent case I pointed out an ambiguity in that respect, as to whether execution of sentence was in fact suspended in retaining 120 day jurisdiction, but otherwise still of the belief that the court in *Ditmars* reached its decision in that case on the basis that probation was not the guiding, or any factor. My own understanding was that the statute allowing a district court to retain jurisdiction for 120 days was to place the court in a position similar to that which a district court occupies in a misdemeanor case, or where sentence on a felony is commuted to a jail sentence—the court being open to entertain such motions as an incarcerated defendant may make. Absent a retained jurisdiction, a trial court is powerless to alter a sentence which he has imposed committing a defendant to the State Board of Correction.

Now, just short months after *Ditmars*, the court perceives that the retention of 120 day jurisdiction *is* a probationary type of arrangement. I am in agreement with a change to that view, but cannot see any reason for not over-ruling *Ditmars* to the extent that it is inconsistent with the court's pronouncements handed down today.

Where a majority of the court are presently of the view to adopt the due process procedures set forth in Justice Donaldson's opinion, I concur, doing so on the basis that what is tendered the 120 day inmate is far superior to that which he has enjoyed. In time, however, I cannot help but think the full court will come around to the position espoused by Justice Bakes.

BAKES, Justice, dissenting:

Although I am sympathetic with the majority's aims, I must dissent both from its affirmance of *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977), *cert. denied* 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978), and from its ruling that the Board of Corrections is constitutionally required to afford the defendant an array of procedural due process protections in connection with the preparation of the board's report and evaluation.

In *Ditmars* this Court ruled that neither I.C.R. 43, which requires that the defendant be present "at the imposition of sentence," nor constitutional provisions, U.S.Const. amend. XIV; Idaho Const. art. 1, § 13, require the district court to give a defendant a hearing following the expiration of the period of retained jurisdiction. The Court's decision in *Ditmars* was based on a technical distinction between the "imposition of sentence," at which time in the Court's view the defendant was entitled to a hearing, and an order relinquishing jurisdiction following a period of retained jurisdiction, which in the Court's view merely effectuated the "execution" of the sentence previously "imposed" and at which time the defendant was not entitled to a hearing. 567 P.2d at 19. Because of this semantic analysis in *Ditmars*, the Court, in my view,

lost sight of the constitutional sentencing requirements of the courts. Now, recognizing in this case that somewhere in this 120 day retained jurisdiction procedure the defendant is entitled to procedural due process, the Court is about to make its second mistake by placing that responsibility on the Board of Corrections.

The Court ruled in *Ditmars* that if the judge exercises his discretion under I.C. § 19–2601(4), the execution of that sentence is immediately suspended and the defendant is committed to the Board of Corrections for 120 days.[1] In such circumstances that initial sentence is clearly tentative and may not be the final sentence to which the defendant will ultimately be subject. The whole purpose of the retained jurisdiction procedure is to enable the court to further evaluate the defendant's prospects for rehabilitation before reaching a final decision on his sentence. The United States Supreme Court in considering this question in the context of a closely analogous procedure in the federal system[2] stated:

"[W]e hold that the District Court erred in the present case when, modifying its original oral § 4208(b) order, it fixed the final sentence in the absence of respondent and his counsel. It is plain that as far as the sentence is concerned the original order entered under § 4208(b) is wholly tentative. That section merely provides that commitment of a defendant to the custody of the Attorney General 'shall be deemed to be for the maximum sentence,' but does not make that the final sentence. The whole point of using § 4208(b) is, in its own language, to get 'more detailed information as a basis for determining the sentence *to be imposed* * * *.' (Emphasis supplied.) It is only after the Director of the Bureau of Prisons makes his report that the court makes its final decision as to what the sentence will be. Rule 43 of the Federal Rules of Criminal Procedure specifically requires that the defendant be present 'at every stage of the trial including * * the imposition of sentence * * *.'
. . . There is no such finality of sentence at a § 4208(b) preliminary commitment. The use of § 4208(b) *postpones* action as to the final sentence; by using that section the court decides to await studies and reports of a defendant's background, mental and physical health, etc., to assist the judge in making up his mind as to what the final sentence shall be. It

---

1. In *Ditmars* the Court presumed that the sentencing court suspends the execution of the sentence at the time the defendant is committed to the Board of Corrections under the retained jurisdiction procedure. In *Ditmars* the Court stated: "By retaining jurisdiction for 120 days pursuant to I.C. § 19–2601(4), the court then suspended the execution of the already imposed sentence." 567 P.2d at 19. This reading of I.C. § 19–2601(4) is not technically accurate. Subsection (4) authorizes the court to "[s]uspend the execution of the judgment at any time during the first one hundred and twenty (120) days of a sentence . . . during which time the court shall retain jurisdiction over the defendant . . . ." I.C. § 19–2601(4). Thus, the sentence imposed is not automatically suspended at the time the defendant is initially committed for the 120 day period. Rather, the court merely retains jurisdiction to suspend the sentence at any time during the 120 day period, *i. e.,* the defendant begins serving the sentence imposed at the time he is initially committed to the custody of the Board of Corrections, not at the expiration of the period of retained jurisdiction. However, this more accurate reading of I.C. § 19–

2601(4) does not alter the fact that the final and critical decision concerning the defendant's sentence and his request for probation is made at the end of the period of retained jurisdiction.

2. 18 U.S.C. § 4205 (formerly § 4208) provides in part:

"§ 4205. TIME OF ELIGIBILITY FOR RELEASE ON PAROLE

. . . . .

"(c) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (d) of this section. . . . After receiving such reports and recommendations, the court may in its discretion: (1) place the offender on probation as authorized by section 3651; or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law."

is only then that the judge's final words are spoken and the defendant's punishment is fixed. It is then that the right of the defendant to be afforded an opportunity to make a statement to the judge in his own behalf is of most importance. This right, ancient in the law, is recognized by Rule 32(a) of the Federal Criminal Rules, which requires the court to 'afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.' This right would be largely lost in the § 4208 proceeding if for administrative convenience the defendant were not permitted to invoke it when the sentence that counts is pronounced." *United States v. Behrens,* 375 U.S. 162, 164–66, 84 S.Ct. 295, 296–97, 11 L.Ed.2d 234 (1963).

In concurring in the result in *Behrens,* Justice Harlan stated:

"The elementary right of a defendant to be present at the imposition of sentence and to speak in his own behalf, which is embodied in Rule 32(a) of the Federal Rules of Criminal Procedure, is not satisfied by allowing him to be present and speak at a prior stage of the proceedings which results in the deferment of the actual sentence. Even if he has spoken earlier, a defendant has no assurance that when the time comes for final sentence the district judge will remember the defendant's words in his absence and give them due weight. Moreover, only at the final sentencing can the defendant respond to a definitive decision of the judge." 375 U.S. at 167–68, 84 S.Ct. at 298.

Similarly, I.C.R. 32(a) and 43 entitle a defendant to be present at the time the court makes it final decision concerning the sentence. In both *Ditmars* and this case, that final decision, as a practical matter, was made at the time the district court decided to relinquish retained jurisdiction and to effectuate the previously imposed, but suspended, sentence. To conclude that the requirements of I.C.R. 43 are satisfied simply because the defendant was present at the time a sentence was initially imposed, which

sentence was suspended in order to commit him to the Board of Corrections for 120 days, is to ignore the reality of the retained jurisdiction sentencing process.

There are still other reasons—reasons not addressed by the Court in *Ditmars*—why the defendant must be afforded a hearing at the time the court decides whether to relinquish jurisdiction. This Court has long held that a defendant is entitled to a hearing and to present evidence concerning his request for probation. In *State v. Cornwall,* 95 Idaho 680, 518 P.2d 863 (1974), we summarized this area of law as follows:

"Before passing judgment, the trial court must grant an applicant for probation a hearing, if he desires one, at which time the applicant must be afforded the opportunity to present evidence which supports his version of the facts, which shows that he is a proper subject for probation, and which rebuts any adverse evidence before the court. [Citations omitted.] In addition, where the court has before it a presentence investigation report, the applicant must have a reasonable opportunity to examine the report and present evidence which rebuts or explains any of the report's contents. *State v. Grady,* 89 Idaho 204, 404 P.2d 347 (1965)." 95 Idaho at 682–83, 518 P.2d at 866.

A trial court's decision to retain jurisdiction for 120 days is surely not a final decision whether to place the defendant on probation. Rather, it is a decision to postpone a final decision concerning probation in order to permit further evaluation of the defendant by the Board of Corrections. In *Ditmars* and the instant case the decisions which had the effect of finally denying the defendants' requests for probation were the trial courts' decisions made at the end of the periods of retained jurisdiction. In both this case and *Ditmars* the trial courts' decisions were based on reports submitted by the Board of Corrections. In my view the defendant's right to an opportunity to present evidence "which shows that he is a proper subject for probation, and which rebuts any adverse evidence before the court," 95 Idaho at 683, 518 P.2d at 866,

must include the right to a hearing at which he is given the opportunity to rebut or explain the board's report and recommendation. The majority opinion clearly depicts the importance many trial judges place on the board's report. The defendant's right to present evidence concerning his suitability for probation and to explain evidence already before the court, a right this Court has consistently upheld, is hollow indeed if the defendant is denied the right to rebut or explain the report which is likely to have the most significant effect on whether he will be ultimately granted probation.

In my view these reports are closely analogous to presentence investigation reports and are in the nature of the additional presentence reports referred to in I.C.R. 37(e), which provides:

"(e) Additional Report May be Ordered. When, in the sentencing judge's discretion, the information contained in the presentence report is not sufficient for determining sentence, the sentencing judge may order an additional investigation of the case and use such results in considering the sentence."

I therefore believe that questions concerning these reports would be best resolved by reference to the provisions of I.C.R. 37(f) which requires, with certain limited exceptions, that the defendant be given access to such reports and afforded an opportunity to appear before the court to explain and defend adverse matters contained in these reports. I.C.R. 37 does not require the *preparers* of the reports to give the defendant a hearing in connection with the preparation of the reports submitted, and it is a mistake to impose that obligation on them.

As a practical matter, the majority's decision may have nullified *Ditmars*. The majority concludes that the Board of Corrections must afford the defendant certain due process rights at the time the report and recommendations are prepared. If the defendant has a right to these procedural safeguards, then he must also have a right to judicial review of the procedures used to prepare his report, probably by the sentenc-

ing court. The majority recognizes this, *see ante* at 736, by referring to review under the Uniform Post Conviction Procedure Act, I.C. §§ 19–4901 to –4911. Thus, by this circuitous route, the majority now decides that a defendant can obtain the hearing and judicial review that the Court in *Ditmars* ruled he could not have. However, I take no consolation in the majority's *de facto* nullification of *Ditmars* because in doing so the majority compounds the steps necessary to arrive at procedural due process. Traditionally, when courts have determined that a protected interest is involved, they have required a hearing before the entity which is acting to deprive the defendant of that interest. For example, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a case heavily relied upon by the majority, involved two individuals who had been convicted of crimes, sentenced to the Iowa State Penitentiary, but later paroled. The Iowa Board of Parole revoked their parole without granting them a hearing. In both instances, the board's decision to revoke the parole was based upon reports submitted by parole officers. In *Morrissey* the United States Supreme Court held that due process required that the parolees be afforded a probable cause hearing and also a more expansive hearing before the Board of Parole, the entity which was empowered to revoke their parole. The Supreme Court did not require the parole officers, who submitted the reports forming the basis of the parole board's revocations, to conduct hearings in connection with the preparation of those reports. The majority opinion cites no authority for the proposition that the due process clause requires an agency which merely submits a report to afford the subject of the report a hearing in connection with the preparation of the report. It is obvious why such authority is lacking. In deciding a variety of matters courts often consider recommendations and evaluations prepared by various governmental agencies and other individuals. If a hearing on the matter is required, the logical and appropriate place to hold that hearing is before the court, the entity which makes the decision

in the matter, and not before those who merely prepare reports and submit recommendations. I cannot concur in the principle of due process enunciated by the majority that the Board of Corrections must afford the defendant an array of procedural due process rights in the preparation of an evaluative report simply because the report often has a significant effect on the court's decision. This misdirection in the development of procedural due process law is likely to lead to the situation in which the numerous individuals and agencies that submit reports for consideration by the courts are required in effect to hold a hearing in order to prepare such a report. Such situation would seriously cripple an agency's ability to prepare a useful report and may undermine the value of that report to the courts.

But I also object to the principle of law stated by the majority on still another and more fundamental ground. In effect this Court is saying in *Ditmars* that the courts are not obliged to afford the defendant procedural due process when the courts *decide* whether to place the defendant on probation following a period of retained jurisdiction or to order execution of the sentence. Yet, in virtually the same breath, the majority in this case holds that the Board of Corrections must afford the defendant procedural due process when it *prepares* the report for the court. These cases smack of a double standard of due process—one for the courts, and a more stringent standard for the Board of Corrections—and will only supply substance for the cynicism with which many law enforcement agencies already view court decisions.

As the majority opinion indicates, judges often place "a great deal of trust in the report and the recommendations contained therein." *Ante* at 733. Since they will be receiving only the board's side of the evaluation of the defendant without allowing the defendant an opportunity to respond, the courts will tend simply to rubberstamp whatever the report recommends. Consequently, responsibility for making the decision will become increasingly blurred between the court, which has the lawful duty to make the decision, and the Board of Corrections, which as a practical matter will often make the decision. When a judge places a defendant in the custody of the Board of Corrections and retains jurisdiction for 120 days it is apparent that the judge believes that the defendant's conduct during those 120 days may well indicate that he is a good candidate for probation. The decision following the period of retained jurisdiction whether to grant the defendant's request for probation is of the utmost importance to the defendant. In my view the defendant, under our criminal justice system, has a right to have that decision made by the court, not the staff at the NICI. The duty to fix a defendant's sentence and to hold hearings in that regard belongs to the courts, and that duty should remain in the courts. The duty for evaluating and disciplining prisoners belongs to the Board of Corrections, and it should be allowed to perform that duty without the burden of performing the courts' hearing functions as well.

I recognize that my position, which would recognize that the defendant is entitled to a hearing before the court, may involve some additional cost because of the need to transport the defendant back to the sentencing court for the hearing. However, those costs would probably not be any greater than the costs necessitated by the majority's approach. As the majority indicates, *ante* at 676, the defendant is entitled to challenge through the Uniform Post Conviction Procedure Act, I.C. §§ 19–4901 to –4911, the procedures by which the report was prepared. Proceedings under that Act are commenced in the district court where the defendant was convicted, I.C. § 19–4902, and in most cases will probably involve a hearing at which the defendant must be produced. *See* I.C. § 19–4907. So really nothing will have been gained by the *Ditmars-Wolfe* procedure, and in fact the whole process may be lengthened even more because of it. Additionally, the administrative burden on the Board of Corrections of complying with the majority's opinion must also be considered.

However, a cost/benefit analysis cannot be the sole or even the primary consideration where procedural due process rights guaranteed by the Constitution are involved. The court's decision following the period of retained jurisdiction is of critical importance to the defendant, and the defendant should not be denied the right to address the court concerning that decision and to rebut or explain adverse statements in the board's report simply for administrative convenience or because that is thought to be the cheaper way to go. The sentencing court has a duty to make an independent judgment on the matter of probation—not merely to follow recommendations by the staff at the NICI because the court has no other information to consider.

The presence of the defendant and his counsel when that decision is made is guaranteed by our Constitution and I.C.R. 32(a) and 43. Therefore I dissent from the majority's action in this case which transfers that responsibility to another agency, an agency which I am sure will be no more pleased with having received it than the defendant will be in having it taken out of the courts.