660 P.2d 938

Delbert L. CRAWFORD,
Petitioner-Respondent,

v.

Ed DERMITT, Warden of the Idaho
State Prison and the State of
Idaho, Respondent-Appellant.

No. 13825.

Supreme Court of Idaho.

March 14, 1983.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Robert R. Gates, Deputy Atty. Gen., Boise, for respondent-appellant.

Howard A. Belodoff, Boise, for petitioner-respondent.

Before DONALDSON, C.J., SHEPARD, BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem.

PER CURIAM.

Based on our decision today in the related consolidated cases of *Ziegler v. State of Idaho* and *Wright v. Dermitt,* 104 Idaho 475, 660 P.2d 940 (1983), the judgment of the district court is affirmed.

BISTLINE, Justice, specially concurring.

Although I have concurred in affirming, I believe our opinion is rather meaningless without recording that which we affirm. Accordingly, I add what I believe to be the salient portions of the opinion by Judge Walters.

"The appellant is an inmate at the Idaho State Correctional Institute. On November 1, 1979, he filed a petition for Writ of Habeas Corpus challenging the reasons why he was being held in maximum security custody....

. . . .

"The issue presented on appeal as stated by appellant in his opening brief is:

" 'Does a person who is a convicted felon sentenced to the Idaho State Prison have a right to a hearing with procedural due process safeguards prior to his being classified administratively as a maximum security prisoner?'

"The record is very sketchy concerning the circumstances leading up to appellant's placement in maximum security custody. Appellant's Affidavit filed June 3, 1980, is somewhat enlightening in this regard. It states that '(o)n or about July 18, 1979, following an incident in which I was stabbed, I was transferred to the maximum security unit at the ISCI.'

"The Affidavit goes on to reflect that appellant was then taken before the classification committee and told that he would be confined in the maximum security unit pending an investigation. The Attorney General's brief of March 18, 1980, indicates that the decisions of this institutional committee are 'administrative' as opposed to 'disciplinary'.

"Appellant complains that he never received notice of the transfer nor a hearing before an impartial body and that he was deprived of the opportunity to appear, testify, present documentary evidence and call witnesses on his behalf. Following an indefinite period of confinement in maximum security custody, including a brief stint in a Utah State prison, appellant was released back into the general prison population."

. . . .

"The Idaho Supreme Court has recognized the parallel trend of the Idaho and United States Supreme Court cases in holding that some form of due process

does apply to proceedings regarding the custody status of prisoners. In *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978), as well as recognizing that trend, the Court noted that the United States Supreme Court had recently affirmed the procedures required in the confinement of inmates in maximum security units for 'administrative' reasons, citing *Enomoto v. Wright,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978) (affirming *sub. nom. Wright v. Enomoto* (U.S.D.C., N.D., Calif.) 462 F.Supp. 397 (1976)). *State v. Wolfe,* 99 Idaho 382, 387, 582 P.2d [728, 733] 778, 783. *Wright v. Enomoto,* supra, recognized that *Wolff v. McDonnell* [418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935] required in sum that in regard to special disciplinary confinement, a prisoner must be given:

' * * * An opportunity to appear before the decision-making body; written notice of the charge against him in advance of the hearing; an opportunity to present witnesses and documentary evidence "when (it) will not be hazardous to institutional safety or correctional goals"; a written statement of the reasons for the decision to punish him and of the evidence on which it is based; and, if he is illiterate or if the issues are complex, counsel-substitute (either a fellow inmate or a member of the prison staff) to help prepare his defense.' 462 F.Supp. at pg. 403.

The Court in *Enomoto* then said:

'Defendants have made no showing that prison administration or safety will be jeopardized if defendants are required to accord plaintiffs at least the minimal protections called for by *Wolff* in the case of disciplinary sanctions. *These minimum protections are essential if the inmate is to have any chance whatever to prove that he does not represent a risk to the security of the institution and thereby to avoid subjection to the severe deprivations of confinement in maximum security.'* 462 F.Supp. at pg. 403. (Emphasis supplied.)

"The final holding in *Enomoto* was that prisoners may not be confined in maximum security for administrative reasons unless they have been provided, minimally, with the safeguards required for such confinement for disciplinary reasons. 462 F.Supp. at 403 . . . .

"Based upon *State v. Wolfe* and *Enomoto* therefore, the general inquiry raised herein by appellant must be answered in the affirmative, i.e., an inmate of the Idaho State Penitentiary *does* have the right to a hearing with procedural due process safeguards prior to being administratively classified as a maximum security prisoner. In order to determine whether the appellant herein is or is not entitled to any relief upon his application for Writ of Habeas Corpus, the next question must be answered:

"Did this appellant receive a hearing with procedural due process safeguards before being reclassified to maximum security?"

The court concluded that the lower court should entertain further proceedings to determine "whether the appellant had received a hearing with procedural due process safeguards before being administratively reclassified to maximum custody."

In voting to affirm, it is my understanding that I am upholding the views of Judge Walters as above set forth. I am also mindful of remarks made by the Honorable Samuel Kaufman, a member of the Commission of Pardons and Parole, in addressing a seminar of Idaho's district judges a year or so ago, to the effect that "the penitentiary out there is not a nice place in which to live." At oral argument in either this case or its companion case, *Wright v. Dermitt,* one of counsel stated that the prisoners are sent to the penitentiary where their confinement away from society is their punishment—they are not sent there *to be punished.* Almost anyone would have to agree that confinement in maximum security is, in and of itself, an extreme form of punishment over and above ordinary confinement.