771 P.2d 61

**Daniel Kaye RATLIFF, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 17018.

Court of Appeals of Idaho.

March 21, 1989.

James L. Schoenhut (argued), and Kenneth W. Eklund, McCall, for petitioner-appellant.

Jim Jones, Atty. Gen. by Peter C. Erbland, Deputy Atty. Gen., Boise, for respondent.

BURNETT, Judge.

Upon a guilty plea, Daniel Ratliff stands convicted of attempted grand theft. He is now serving a seven-year indeterminate sentence. In this appeal, he challenges the denial of an application for post-conviction relief in which he alleged that his sentence was tainted by a denial of due process and by the ineffective assistance of counsel. We affirm the order denying Ratliff's application.

I

The attempted theft occurred in McCall, Idaho, where Ratliff found a passbook to a savings account. Pretending to be an authorized signator on the account, he went to the financial institution where the account was located. He presented a withdrawal slip and requested $450. When a teller asked for identification and made a telephone call regarding the account, Ratliff walked out. The incident was reported to law enforcement authorities in Valley County, who promptly arrested Ratliff.

In the district court, Ratliff initially pled not guilty to the charge of attempted grand theft. The court learned that Ratliff also had been charged with forgery in Canyon County, where he allegedly cashed several stolen checks. While awaiting disposition of all charges, Ratliff obtained a release from pretrial confinement in Valley County in order to participate voluntarily in an alcohol-drug rehabilitation program at State Hospital North in Orofino. The program evidently was expected to provide an evaluation of Ratliff's suitability for placement at a long-term treatment facility. Unfortunately, the hospital discharged Ratliff within a few days because he had violated numerous rules of conduct for patients. Ratliff contended that he had not been informed of the rules and that the

discharge was arbitrary. However, he did not seek to re-enroll in the program.

During these proceedings, Ratliff was represented by public defenders in Valley and Canyon Counties. In consultation with his attorney in Canyon County, he decided to plead guilty on two counts of forgery. Despite a long criminal record, he received "120–day rider" sentences—that is, consecutive indeterminate sentences of three years, both subject to a single period of retained jurisdiction for 120 days under I.C. § 19–2601(4). Ratliff's attorney in Valley County negotiated a plea agreement providing for another indeterminate sentence with a consecutive period of retained jurisdiction. However, Ratliff rejected the bargain, electing instead to couple his guilty plea with a request for a 120–day "rider" *concurrent* with the retained jurisdiction in Canyon County.

Upon accepting Ratliff's plea, the Valley County judge ordered an update of the presentence investigation report prepared in Canyon County. The updated report disclosed that Ratliff had long been addicted to drugs; that he had an extensive criminal record, including an armed robbery; and that he had been incarcerated twice at the Idaho State Penitentiary, once at the Oregon State Penitentiary and once at a federal facility. The report commented extensively on Ratliff's drug problem, observing that "until the defendant completes a long-term, inpatient drug treatment program, he will most likely continue to be institutionalized."

A sentencing hearing was conducted. Ratliff gave the Valley County judge his version of circumstances surrounding the untimely discharge from State Hospital North. He further stated that although he was a "pharmaceutical junkie," he was motivated to participate in a drug treatment program and to change his prior behavior. At the conclusion of the hearing, however, Ratliff received a seven-year indeterminate sentence with no period of retained jurisdiction. The court invited Ratliff to file a motion under I.C.R. 35 within 120 days, apparently contemplating that the Canyon County court would decide by that time

whether to grant probation or to relinquish its retained jurisdiction. So far as the present record discloses, probation was not ultimately granted in the Canyon County case. Ratliff filed a Rule 35 motion in the instant case, but the motion was denied. Ratliff did not directly appeal the judgment or the order denying his Rule 35 motion. Rather, he filed an application for post-conviction relief, attacking the fairness of the sentencing proceedings and the adequacy of his legal representation. When that application also was denied, this appeal followed.

## II

As we examine the issues now before us, we note that post-conviction relief is limited in scope with respect to criminal sentencing. A judge's exercise of discretion, in choosing a sentence within lawful limits, is not subject to attack by an application for post-conviction relief. The narrow focus of a post-conviction proceeding is upon any legal defect in the sentence itself or in the sentencing procedure. Here, both of the issues raised by Ratliff pertain to sentencing procedure.

## A

Ratliff contends that he was denied due process in two respects. First, he argues that the updated presentence report was defective because it was prepared by an investigator who was married to the teller at the financial institution where the attempted theft occurred. We readily acknowledge that a close relationship between a presentence investigator and a victim would trigger heightened judicial scrutiny of the presentence report, especially if that relationship were not timely disclosed to the defendant. However, in this case the teller was not the "victim" of Ratliff's crime. Moreover, Ratliff has identified nothing in the report itself which could be considered unfair; indeed, the judge who denied the application for post-conviction relief described the presentence report as "favorable toward the defendant." Finally, it is undisputed, and the judge so found, that the relationship between the investiga-

tor and the teller had been timely disclosed. Upon learning of the relationship, Ratliff neither objected to the investigator nor requested that any other investigator be assigned to his case.

Secondly, Ratliff argues that the sentencing procedure was infected by a denial of due process at State Hospital North, from which Ratliff received the allegedly arbitrary discharge. This argument implicitly assumes that a sentencing proceeding is an appropriate forum in which to litigate a defendant's grievances against third parties. The assumption is ill-founded. In general, where actions or allegations by a third party raise an issue relevant to a defendant's sentence, due process is satisfied if the defendant is given a full opportunity to explain or defend his position on the issue and to present favorable evidence in his own behalf. *See, Holmes v. State*, 104 Idaho 312, 658 P.2d 983 (Ct.App.1983) (asserted inaccuracies in presentence report do not constitute reversible error if defendant has been accorded opportunity to explain and rebut adverse information). In this case, Ratliff was given such an opportunity during the sentencing hearing.

Of course, there are limited exceptions to the general rule we have enunciated. For example, if the severity of a potential sentence turns upon the existence of certain prior convictions, an inquiry into the validity of those convictions may be permitted. *E.g., Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). That exception plainly is not applicable here. Another exception may arise when a sentencing court retains jurisdiction under I.C. § 19–2601(4), and the defendant is denied due process during an evaluation conducted for the court at the North Idaho Correctional Institution (NICI). In *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978), our Supreme Court prescribed minimum due process requirements for such evaluations, explaining that administrative due process is necessary because defendants are not entitled to judicial hearings after their evaluation reports have been forwarded from NICI to the courts. The concerns

underlying *Wolfe* are not present in the instant case. Ratliff's discharge from State Hospital North, following a voluntary admission, was not functionally equivalent to an NICI evaluation. Moreover, Ratliff received a judicial hearing—the sentencing hearing—in which the hospital discharge and the underlying question of long-term drug treatment were addressed. We conclude that Ratliff was not denied due process.

### B

We now turn to Ratliff's contention that he received ineffective assistance of counsel. A claim of ineffective assistance must be supported by a showing that the attorney failed to perform as a reasonably conscientious advocate for the defendant, and that this failure resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, Ratliff contends that he was not represented by a reasonably conscientious advocate because his attorney—a lawyer different from his counsel in the post-conviction proceedings—failed to prevent Ratliff from making certain litigation decisions which Ratliff now believes were disadvantageous. Ratliff sharpens his criticism of the attorney's alleged passivity by observing that the attorney's law partner was a brother of the same teller who was married to the presentence investigator in this case.

It is indeed unusual, even in a small town like McCall, for defense counsel's partner to be related both to a potential witness for the prosecution and to the presentence investigator. Although such indirect relationships create no conflicting professional obligations, they could cause defense counsel to experience mixed personal feelings about the case, potentially affecting his professional judgment. Accordingly, it would be prudent for counsel to withdraw unless the client consented to continuing representation after timely disclosure. *See* Rules 1.7 and 1.10, Idaho Rules of Professional Conduct. Here, the defense attorney testified, during the post-conviction hearing, that a timely disclosure had

been made and that consent had been obtained. This testimony was corroborated by the presentence investigator. Ratliff denied it. Unfortunately, the court made no express finding on this disputed point.

Nevertheless, even if we assume that the potential dilemma of a personal conflict was not cured by disclosure and consent, we decline to hold that such a circumstance establishes ineffective assistance of counsel *per se*. The question of ineffective assistance turns on actual events, not on potential states of mind. In *McNeeley v. State*, 111 Idaho 200, 722 P.2d 1067 (Ct. App.1986), we held that a *potential* conflict of professional obligations was not sufficient to demonstrate ineffective assistance of counsel. We declared in that case, and we reiterate today, that ineffective assistance must be established upon proof of an actual conflict which has resulted in discernible prejudice.

■ Accordingly, we turn to the specific failure Ratliff ascribes to his attorney's performance—that the attorney should have made certain litigation decisions himself, rather than allowing Ratliff to make them. The decisions in question apparently are (1) rejection of the proposed plea bargain which contemplated a "120–day rider" consecutive to retained jurisdiction in the Canyon County case, and (2) refusal to seek a continuance of the sentencing hearing in order to obtain information from the drug abuse counselor familiar with Ratliff's needs. Ratliff acknowledges that he made these decisions after consulting with counsel. However, he argues, in essence, that his capacity to make such decisions was impaired by drug abuse, and that his attorney should have overruled him.

The question of mental impairment is one of fact. The judge in the post-conviction case held a full evidentiary hearing and found that Ratliff had not suffered any impairment sufficient to make the sentencing proceeding "unmeaningful." This finding is supported by substantial, albeit somewhat conflicting evidence, and will not be disturbed. Although the finding is a broad one, it connotes—at the very least—that Ratliff was a competent client, able to relate to his attorney and to understand the proceedings against him.

The issue before us, therefore, is narrowed to the attorney's proper role in representing a competent client. The American Bar Association has provided the following definition in its *Standards Relating to the Administration of Criminal Justice*, Compilation, at § 5.2 (1974):

5.2 Control and direction of the case.

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.

(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

Accepting this formulation for the purpose of discussion, it is clear that the decision on the proposed plea bargain was one for Ratliff himself to make, upon due consultation with counsel. The attorney acted properly in allowing Ratliff to do so. However, Ratliff is correct in arguing that the attorney should have taken ultimate responsibility for the decision whether or not to proceed with the sentencing hearing, despite a lack of information from the drug counselor.

There may well have been sound tactical reasons for this decision, such as Ratliff's apparent desire to conclude the sentencing in Valley County as soon as possible and to start serving the Canyon County sentences with their "120–day rider." In any event, the record contains no indication that this decision resulted in prejudice to Ratliff. The information sought from the drug abuse counselor was contained in a letter written prior to the sentencing hearing but delayed in its delivery to the court. The letter subsequently was introduced in evi-

dence, and the drug counselor testified, during the post-conviction proceedings. The post-conviction judge made no specific finding as to the importance or usefulness of the letter; however, he did comment that Ratliff had not been prejudiced by the lack of any testimony by the drug counselor at sentencing. In this appeal, the state has characterized the counselor's letter as a mere "plea for leniency" on Ratliff's behalf. Although we believe that characterization may be too shallow, we do agree that the letter contained no specific information regarding Ratliff's past drug abuse —nor any specific recommendation for future treatment—which had not already been identified in the updated presentence investigation report.

Consequently, we uphold the judge's implicit determination that no prejudice resulted from the attorney's acquiescence in Ratliff's decision to conduct the sentencing hearing without the drug counselor's letter or testimony. We conclude that Ratliff has failed to show an entitlement to relief based on ineffective assistance of counsel.

The order denying Ratliff's application for post-conviction relief is affirmed. Post-conviction proceedings being civil in nature, costs are awarded in this appeal to the respondent. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.