899 P.2d 989

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert Terry JOHNSON, Jr., Defendant,**

**and**

**Thomas Robert Petersen, Defendant–Appellant.**

**No. 21687.**

Court of Appeals of Idaho.

July 27, 1995.

**280**

Severt Swenson, Jr., Gooding, for appellant.

Alan G. Lance, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

PERRY, Judge.

This is a sentence review. In February of 1994, Thomas Robert Petersen entered into a written agreement pursuant to I.C.R. 11 to plead guilty to two counts of murder in the first degree. I.C. § 18–4003(d). In exchange for Petersen's guilty pleas and his agreement to testify against co-defendant, Robert Terry Johnson, Jr., the state waived its right to seek the death penalty. Petersen was sentenced to two life terms without the possibility of parole. On appeal, Petersen argues that the sentences were excessive given the circumstances of the case and his potential for rehabilitation and, therefore, should be vacated. We affirm.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent examination of the record, having regard for the nature of the offense, the character of the offender and the protection of public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

The facts of this case show a very gruesome attack carried out jointly by Petersen and Johnson over a two-hour period. In interviews conducted by investigators and in statements to the court, Petersen and Johnson each attributed the most violent acts to the other. Both denied performing several of the acts that eventually lead to the death of their victims and accused the other of committing those acts. The record, according to Petersen, sets forth the following scenario.

During the early morning hours of September 14, 1993, Petersen and Johnson entered the home of Ricky Lee Mangum and Connie Allen, whom they had met briefly for the first time earlier in the evening. Shortly after entering the home, a struggle ensued involving both Petersen and Johnson, and Mangum and Allen. Mangum was viciously attacked with a tire iron resulting in bruises on both hands and gaping lacerations extending deep into the skull. After Mangum collapsed to the floor, Petersen tied Mangum's arms and legs behind his back using electrical cords. Demanding Mangum's money, Petersen took eight dollars from Mangum's wallet which was in a vehicle parked outside the residence. Mangum's throat was repeatedly slashed by Petersen and Johnson as he lay unclothed and tied up on the kitchen floor. Mangum's death resulted from the laceration of the carotid artery and the right jugular vein. Although Petersen admitted to slashing Mangum's throat, causing one of the several smaller lacerations, he denied making the deep, gaping cut which killed Mangum.

Allen was restrained by Johnson while Petersen tied her up with a shirt. She was taken into the bedroom where she was raped by Petersen and Johnson. Johnson also sodomized her. After being raped, Allen's throat was slashed several times, severing the trachea and the right and left jugular veins. Believing Allen was dead, Johnson and Petersen dragged her body into the bathroom to destroy any evidence that would connect them to the rape. At some point Allen revived and began to struggle. She was placed in the tub which Petersen had filled with water. Allen was then severely beaten with a tire iron fracturing numerous bones and lacerating and puncturing her skin. Petersen tied up Allen again using an electrical cord, and then held her head under the water in the tub. Allen died as a result of the severing of her right and left jugular veins. However, contributing factors were fresh water aspiration asphyxiation and a severe blow to the head.

Before leaving the residence, Petersen and Johnson attempted to wipe up the blood and destroy any evidence. In addition to the eight dollars taken from Mangum's wallet, six dollars were stolen from Allen's purse and a jar of change was also removed from the house. The tire iron and some bloody clothing were thrown into the Big Wood River by Petersen and Johnson as they left the scene.

At the time of sentencing Petersen was twenty-five years old. In mitigation, he reported having been physically abused by his alcoholic mother and abandoned by his alcoholic father. Petersen's parents divorced, and as a youth he became an excessive alcohol and drug user. A psychological evaluation was prepared, and the examiner testified on Petersen's behalf at sentencing. Petersen was found to have an antisocial personality. The examiner concluded that the prognosis toward rehabilitation was very guarded until Petersen would be approximately fifty years old, at which time some studies indicated that people with antisocial personalities tended to "burn out." Defense counsel requested an indeterminate life sentence with a fixed twenty years' incarceration.

The district court, however, found several aggravating factors in Petersen's case in addition to the nature of the crime itself. The district court noted that Petersen had been placed at State Hospital South for evaluation and treatment when he was fifteen years old. He spent one year at the Youth Services Center in St. Anthony as a juvenile offender. As an adult Petersen had been convicted of burglary, grand theft, resisting and obstructing an officer, battery, and disturbing the peace. He was on probation for a prior felony conviction at the time of the instance offense and had additional felonies, including a persistent violator enhancement, pending in another county.

In addressing the psychological evaluation, the district court noted that the studies which showed the antisocial personality "burn out" later in life were not conducted on rapists or murderers. Despite the evaluator's prognosis, the district court was satisfied to a high degree of certainty that society could only be protected by keeping Petersen in custody for the rest of his life.

As to the offenses committed here, the district court found that the crimes were particularly heinous and egregious. The court concluded that it was a robbery, rape and brutal double homicide within the victims' home which lasted over two hours. The court further concluded that participation in such offenses, combined with Petersen's attitudes, behaviors and characteristics, demonstrated a contempt for the law and the order of society, as well as an utter disregard for human life. Acknowledging that the sentences precluded the possibility of rehabilitation, the district court determined that Petersen could not successfully be rehabilitated. Therefore, the court noted that rehabilitation was secondary to the protection of society, deterrence and retribution in Petersen's case.

█ The issue before this Court is not whether the sentence is one that we would have imposed, but whether the sentence is plainly excessive under any reasonable view of the facts. *Toohill,* 103 Idaho at 568, 650

P.2d at 710. If reasonable minds might differ as to whether the sentence is excessive, we are not free to substitute our view for that of the district court. *Id.* Having reviewed the record in this case, we cannot say that the district court abused its discretion.

Therefore, the judgment of conviction and sentences are affirmed.

WALTERS, C.J., and LANSING, J., concur.