800 P.2d 121

STATE of Idaho, Plaintiff–Respondent,

v.

James D. BOSWELL,
Defendant–Appellant.

No. 18055.

Court of Appeals of Idaho.

Oct. 24, 1990.

---

Smith, J. pro tem., specially concurred and filed opinion.

R. Ted Israel, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., James E. Leuenberger, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

James Boswell appeals from the district court's order relinquishing jurisdiction over him. On appeal, Boswell raises two issues. First, he claims that his due process rights were violated by the hearing procedures at the North Idaho Correctional Institution (NICI). Secondly, Boswell contends that his sentence should be reduced. For reasons explained below, we affirm.

We begin by reviewing the facts of the case. Boswell was arrested and charged with robbing an elderly man in his home at gunpoint. Plea negotiations with the state commenced. In return for pleading guilty to the robbery charge, the state agreed to drop all related charges, including the charge of enhancement for the use of a firearm. The state also agreed to recommend that the district court retain jurisdiction over Boswell. Initially, the court refused to accept Boswell's guilty plea and the state's recommendation. However, the court later agreed to both. The court sentenced Boswell to a fixed term of ten years plus an indeterminate term of twenty years and retained jurisdiction over Boswell for 120 days.

The Idaho Department of Corrections placed Boswell at NICI in Cottonwood. At the expiration of the 120–day period, the district court followed the recommendation of the committee and extended its jurisdiction over Boswell for an additional sixty days. Before the expiration of the sixty-day period, the committee made a final recommendation that the court relinquish jurisdiction over Boswell. After considering the committee's recommendation, the presentence report and the nature of the offense, the district court relinquished its jurisdiction. Boswell filed this appeal claiming error in the procedures surrounding the NICI committee hearings.

Boswell also moved under I.C.R. 35 to have the district court reconsider his sentence. Both parties submitted affidavits and presented oral arguments. The district court entered an order reducing Boswell's sentence to a fixed term of five years plus an indeterminate term of ten years. In his appeal, Boswell asserts that the sentence as modified is excessive.

■ Before we proceed, we note our standard of review. The purpose of retaining jurisdiction over a defendant is to provide the district judge with an opportunity to evaluate the defendant's potential for rehabilitation and his suitability for probation. *State v. Averill,* 116 Idaho 181, 774 P.2d 351 (Ct.App.1989). "The decision whether to relinquish jurisdiction or to grant probation rests within the sound discretion of the sentencing court." *Id.* at 182, 774 P.2d at 352. Consequently, the district court's order relinquishing jurisdiction over Boswell will not be disturbed on appeal absent a clear showing that the district court abused its discretion.

■ We now turn to the first issue on appeal. Boswell contends the district court erred by relinquishing jurisdiction over him and by denying his request for an evidentiary hearing on the due process issue. The error, according to Boswell, lies in the district court's failure to address his claim that his due process rights were violated by the alleged error-ridden hearing procedures

of the committee. In particular, Boswell asserts: (1) he was given erroneous information about his original board date and was never personally given the exact date of his second hearing before the committee; (2) he only had ten minutes to review his evaluation; (3) he was denied access to the institution's administrative policies and procedures manual and its law library; and (4) he was not allowed access to witnesses.

■Before we address this issue, it should be noted that our Supreme Court has stated that a defendant has certain due process rights at an evaluation hearing. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Certain minimal procedures are required of an institution to ensure the completeness and fairness of its reports. *State v. Shofner*, 103 Idaho 767, 653 P.2d 1179 (Ct.App.1982). *Wolfe* requires the following procedures:

> Before a report is sent back to the sentencing judge (pursuant to the retained jurisdiction of I.C. § 19–2601), certain procedures must be followed. The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge.

99 Idaho at 389, 582 P.2d at 735.

Boswell contends that he received no notice of his first evaluation hearing because the dates were changed without notifying him. However, a close examination of the record shows that Boswell's argument is not supported by the record. Boswell arrived at NICI on September 21, 1988. At that time, Boswell signed a form indicating that his hearing date would be on December 26, 1988. In reality, the hearing date was scheduled for December 5, 1988. There is no evidence to support Boswell's assertion that the hearing date had been changed. There is evidence, however, of a clerical error in the form which Boswell signed upon entering NICI. On the clerk's intake sheet, Boswell is listed as having a hearing date of December 5, 1988 and an expiration date of December 26, 1988. The clerk erred in completing the form which Boswell signed by taking the date from the wrong column of the clerk's intake sheet. On all other documents posted in the dorm office and other locations, the hearing date was properly listed as December 5, 1988. Therefore, we conclude that Boswell had sufficient notice of his first hearing date.

■ Boswell also complains that he did not receive any notice of his second hearing date. However, the record does not support Boswell's contention. The affidavit of Dean Allen, deputy warden, states that Boswell was verbally informed that the committee would see him again in sixty days. Apparently, Boswell also signed a form that explained this to him. The exact date was supposedly determined later by the clerk and posted in each dorm office. In this case, we will not presume error. *Wolfe*, 99 Idaho at 390, 582 P.2d at 736. On appeal, it is Boswell's obligation to make a proper showing in the record that error occurred. *Id.* Because Boswell has not met his burden of showing that notice was insufficient, we will not assume that due process was violated.

■ Boswell next argues that he was denied due process when the committee only gave him ten minutes to review his evaluation. Boswell claims that this violates *Wolfe*'s requirement that a prisoner have notice of the substance of all matters that will be considered at the hearing. Again the record does not support Boswell's contention. The record shows that Boswell signed a document indicating that he had read the officers' comments regarding his performance at NICI. The document also explained the items that the committee would consider at his rebuttal hearing. There is also no evidence in the record that Boswell asked for additional time to review his evaluation. Based on the record before us, Boswell has not shown that he was denied due process.

■ Boswell further contends that due process was denied him when he was deprived of access to NICI's administrative policies and procedures manual and the institution's law library. However, a review of the record indicates otherwise. In his affidavit, Allen points out that all new arrivals receive a copy of the policy and procedure rules at NICI. This statement is supported by the record. Boswell signed a document acknowledging receipt of a copy of NICI's policies and procedures. Allen also explained that a current copy of the departmental policies concerning inmates was available to Boswell in the library and in various other offices at NICI.

■ Boswell's claim that he was denied access to the law library is unsupported by the record. Moreover, we are not convinced that *Wolfe* requires that an inmate have access to a law library in preparation for an inmate's Jurisdictional Review Hearing. *See, e.g., Schmidt v. State*, 103 Idaho 340, 647 P.2d 796, (Ct.App.1982) (review denied) (explaining that *Wolfe* does not require an additional procedural safeguard— such as assistance of counsel); *State v. Hanslovan*, 116 Idaho 266, 775 P.2d 158 (Ct.App.1989) (procedural safeguards enumerated in *Wolfe* are sufficient to satisfy due process requirements—*Wolfe* procedures do not recognize a right to an inmate law clerk). However, in this case we need not decide this issue because the record reveals that Boswell was given access to the law library.

In Allen's affidavit, he explains that inmates are required to submit a request to use the law library at NICI. The record reveals that Boswell did not request access to the law library while he was housed in segregation. However, on two separate occasions Boswell did request to use the law library in Orofino. Both requests were granted by NICI. Accordingly, we conclude that Boswell's allegation is without merit.

■ Finally, Boswell asserts that due process was denied because he was not allowed access to witnesses. *Wolfe* requires that an inmate be free to call witnesses in his behalf from among the employees and other prisoners at the institution. *State v. Wolfe, supra.* The record does show that Boswell did ask to question potential witnesses while he was housed in segregation because of a disciplinary offense. Because of the institution's security procedures, Boswell was not allowed to bring potential witnesses into the segregation building. Boswell was also housed in prehearing detention on the night before his rebuttal hearing before the committee.

However, at the hearing before the committee, Boswell was asked if he desired to call witnesses to address the specific areas the committee was considering and he chose not to do so. Boswell signed a document stating that he had sufficient time to consider the committee's intended recommendation. The only box checked on the signed document was the one that requested that the committee consider his rebuttal statement. Boswell did not check the box which asks the committee to consider statements from witnesses. Based on our review of the record, we hold that Boswell was not denied the opportunity to call witnesses on his behalf. Consequently, we find no due process violation.

We conclude that Boswell was not denied due process at his administrative hearing before the committee. Therefore, the district court did not err by denying Boswell's motion for an evidentiary hearing.

■ We now turn to the second issue on appeal. Boswell contends that the district court erred by failing to further reduce his sentence. Boswell was originally sentenced to a fixed term of ten years plus an indeterminate term of twenty years on the robbery charge. Following a hearing on Boswell's Rule 35 motion, the district court reduced Boswell's sentence to a minimum term of five years plus an indeterminate term of ten years. Boswell now argues that his sentence should be reduced even more.

■ A motion to reduce a lawful sentence imposed in a legal manner is addressed to the sound discretion of the district court. *State v. Arambula*, 97 Idaho 627, 550 P.2d 130 (1976). The motion is

essentially a plea for leniency that may be granted if the original sentence was unduly harsh. *State v. Lopez*, 106 Idaho 447, 680 P.2d 869 (Ct.App.1984). Where an appeal is taken to challenge the decision on a Rule 35 motion, our scope of review includes all information presented at the original sentencing hearing as well as all facts considered at the subsequent hearing. *Id.*

The maximum penalty for robbery is life in prison. I.C. § 18–6503. Here, Boswell's sentence was well within the statutory limits. The district judge reduced Boswell's unified sentence to a fixed term of five years plus an indeterminate term of ten years. The fixed term represents the minimum amount of time Boswell must spend in prison before he will be eligible for parole consideration. Consequently, for purposes of determining the reasonableness of the sentence, we will treat five years as the probable time Boswell will be incarcerated. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). The reasonableness of a sentence is determined by the well-known sentencing goals enunciated in *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App.1982) and *State v. Sanchez, supra.* These sentencing goals are evaluated in light of the nature of the offense and the character of the offender. *State v. Amerson*, 113 Idaho 183, 742 P.2d 438 (Ct.App. 1987) (review denied).

With this criteria in mind, we turn to the nature of the crime. Boswell and three other individuals armed with a knife and a gun entered the victim's trailer to steal money. During the robbery, Boswell terrorized the victim by pressing a gun barrel against the victim's head. The victim admitted being in fear of his life and it was only through good fortune that no one was injured in the ordeal. Based on the seriousness of the crime, the judge at sentencing noted that Boswell needed to be punished. The judge also acknowledged that society needed to be protected and that other potential offenders must be deterred from committing these types of crimes.

The district judge also considered Boswell's character. Boswell was only seventeen at the time of the offense. Boswell's record shows that he had a history of drug and alcohol abuse as well as a poor family environment while growing up. In addition, the judge noted that Boswell had not been convicted of any previous violent crimes. Because of these mitigating circumstances, the judge believed probation was a viable alternative. With these facts in mind, the judge sentenced Boswell to a thirty-year sentence with ten years minimum incarceration. However, the judge agreed to retain jurisdiction for 120 days so that Boswell's potential for rehabilitation could be further evaluated by the Board of Correction at NICI. The judge informed Boswell that if he did successfully complete the retained-jurisdiction program, he would be placed on probation.

As noted, the "Jurisdictional Review Committee" at NICI eventually recommended that the judge relinquish his jurisdiction over Boswell. The judge accepted the recommendation, allowing the sentence to stand as imposed. The judge denied probation because Boswell did not successfully complete the program at NICI. Nevertheless, after a subsequent hearing on Boswell's motion for reconsideration, the judge reduced the sentence to the present fifteen-year term with five years minimum incarceration. On reflection, the judge wanted to ameliorate the harshness of the original sentence, but still believed that the seriousness of the offense could not be overlooked.

We believe the district judge properly considered all the sentencing goals. The judge's reasons are well explained and supported by the record. Accordingly, we conclude that the judge did not abuse his discretion by declining to further reduce the sentence.

The judgment of conviction is affirmed, including the order relinquishing jurisdiction and the modified sentence.

WALTERS, C.J., concurs.

SMITH, Judge, Pro Tem., specially concurring.

In the order relinquishing jurisdiction over Boswell, the district judge stated his

reasons, as noted in our decision. It should be emphasized that the judge considered not only that Boswell had not successfully earned probation at NICI but he considered also the presentence investigation report. That report revealed a sufficient basis standing alone to justify the sentence imposed by the judge even if the court had not retained jurisdiction at the time of the initial sentencing. Accordingly, in the light of Boswell's failure to earn a favorable recommendation from the NICI staff, arguably it would have been an abuse of discretion for the district judge to have granted Boswell probation.

In addition, as noted by the state in its brief, Boswell's argument that the NICI evaluation committee did not afford him due process because he was not allowed to call witnesses at his evaluation hearing does not help him in this case. Even if this allegation is true, the record does not reflect any indication of what information any such witnesses would have provided if allowed to testify.

> In order to establish an actual deprivation of due process, it was incumbent upon [the inmate] to make some showing that the witnesses' testimony would have been material and favorable to his evaluation.

*State v. Hanslovan*, 116 Idaho 266, 268, 775 P.2d 158, 160 (Ct.App.1989).

The same goes for any witnesses' evidence which the district judge might have heard had he allowed testimony at the time he decided to relinquish jurisdiction. No showing was made to the district judge as to who would be witnesses or what the witnesses would say at the time of any hearing which the judge might have allowed when he was considering whether to relinquish jurisdiction or to grant probation. Without such a showing, a district judge would have no basis upon which to order an evidentiary hearing. The district judge did have for consideration two affidavits from Boswell and a detailed responding affidavit from NICI Deputy Warden

Dean Allen. The district judge initially granted Boswell an evidentiary hearing upon receipt of Boswell's affidavits but changed his mind and rescinded the hearing after reviewing the deputy warden's affidavit. Boswell's affidavits detailed his accomplishments at NICI and the alleged error of the committee in evaluating him. The deputy warden's affidavit discussed Boswell's accomplishments and his failures and explained committee procedures in this case.

Boswell in seeking an evidentiary hearing under Rule 35 is requesting a remedy he has no right to receive. *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). While an inmate has no right under retained jurisdiction to have an evidentiary hearing before the court, the judge may choose to grant such a hearing. *Id.* In this case, the judge at the time of sentencing promised counsel he would hold such a hearing. When the time came for the judge to decide whether to retain jurisdiction and grant probation, upon review of the report of the evaluation committee, he at first dropped jurisdiction without having a hearing. Later, he recognized his promise and allowed counsel to orally argue the matter but no evidentiary hearing was allowed. Ultimately, the judge substantially reduced the sentence.[1] By allowing oral argument, the judge fulfilled his promise.

Inasmuch as Boswell had no right to an evidentiary hearing on the expiration of the time of his retained jurisdiction and further because no presentation was made to the judge as to who would be witnesses and what they would say, the judge would certainly have no basis on which to grant an evidentiary hearing pursuant to his promise or otherwise. Also, whether an evidentiary hearing should be held on a Rule 35 motion is discretionary with the court. *State v. Puga*, 114 Idaho 117, 753 P.2d 1263 (Ct. App.1987).

---

1. Upon relinquishing jurisdiction, the court may—within its discretion—reduce a sentence even without a Rule 35 motion. *State v. Sals-* *giver,* 112 Idaho 933, 736 P.2d 1387 (Ct.App. 1987).

In order for a district court to grant probation after retaining jurisdiction, the court would likely be more interested in what the inmate has done right rather than what the state has done wrong unless what the state has done has prevented the inmate from making a favorable showing on his own behalf. Here, we have no showing of who would relate what the inmate has done right—either at the evaluation committee hearing or before the court.

Under such circumstances, Boswell has not shown how he was harmed by any failure of the evaluation committee to allow him to present witnesses. In this regard, he was not denied due process.

Further, as stated, under the same circumstances, the district court would have no basis to grant an evidentiary Rule 35 hearing.

Accordingly, I concur.