874 P.2d 571

**James V. FREE, Jr., Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 20300.**

Court of Appeals of Idaho.

Dec. 21, 1993.

Petition for Review Denied March 10, 1994.

---

Alan E. Trimming, Ada County Public Defender; Steven A. Botimer, Deputy Public Defender, Boise, for petitioner-appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for respondent.

LANSING, Judge.

In this appeal from the district court order denying James V. Free, Jr.'s application for post-conviction relief, we are asked to determine whether the jurisdictional review hearing procedures utilized at the North Idaho Correctional Institution ("NICI") deprived Free of due process. For the reasons stated below, we conclude that Free was denied due process. Therefore, we vacate the order of the district court and remand this case for further proceedings.

Free was sentenced in 1988 on a conviction of rape, I.C. § 18–6101, to a term of imprisonment of not less than three years nor more than ten years. The district court retained jurisdiction pursuant to I.C. § 19–2601(4) for an initial period of 120 days, which was later extended to 180 days, and Free was remanded to the custody of the Board of Correction and assigned to NICI. Near the conclusion of the 180–day period, the Jurisdictional Review Committee at NICI conducted a hearing on Free's suitability for probation. Following the hearing, the committee sent a report to the sentencing judge recommending against probation for Free. The court then relinquished jurisdiction, thereby requiring Free to serve the remainder of his sentence.

On October 18, 1992, Free filed an application for post-conviction relief pursuant to I.C. § 19–4901 alleging, *inter alia*, that his due process rights were violated by the procedures of the NICI Jurisdictional Review Committee. A trial was conducted at which the district court heard evidence on the alleged due process violations. The court thereafter denied Free's application for relief.

■ The purpose of the retained jurisdiction procedure authorized by I.C. § 19–2601(4) is to provide a period for evaluation of the offender's potential for rehabilitation and suitability for probation. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). With the benefit of a report from the correctional facility, the sentencing court may modify the sentence or suspend the sentence and place the defendant on probation. *Wolfe*, 99 Idaho at 385, 582 P.2d at 731; *McDonald v. State*, 124 Idaho 103, 105, 856 P.2d 893, 895 (Ct. App.1992).

In *Wolfe*, our Supreme Court held that an inmate possesses a liberty interest in the proceedings by which correctional facility staff develop their report to the sentencing court. This liberty interest entitles the inmate to minimal due process safeguards.

Before a report is sent back to the sentencing judge (pursuant to the retained

jurisdiction of I.C. § 19–2601), certain procedures must be followed. The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge.

Free argues that during the jurisdictional review proceedings at NICI his due process rights were violated in the following respects: (1) He was not allowed to meet with the jurisdictional review committee until after it had reached a tentative decision, at which time he was merely given an after-the-fact opportunity to rebut the decision that had already been made; (2) he was not provided a complete or coherent statement of the reasons for the committee's preliminary decision to recommend that jurisdiction be relinquished; (3) he was not allowed to read the staff evaluations considered by the committee; (4) he was not allowed to see the psychological evaluation considered by the committee; (5) he was deprived of the ability to meet with witnesses who could testify on his behalf and was denied the right to call witnesses at the rebuttal hearing; (6) he was denied writing materials by which to prepare a written rebuttal statement or prepare notes for an oral rebuttal. We will address each of these contentions in turn.

## I. STANDARD OF REVIEW

■ A petition for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983). Like a civil plaintiff, the petitioner must prove by a preponderance of evidence the allegations upon which the request for relief is based. *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). Where the district court conducts a hearing and enters findings of fact and conclusions of law, we will disturb the findings of fact only if they are clearly erroneous, but we freely review the conclusions

of law drawn by the district court from those facts. *Gee v. State,* 117 Idaho 107, 110, 785 P.2d 671, 674 (Ct.App.1990); *Reeves v. State,* 105 Idaho 844, 845, 673 P.2d 444, 445 (Ct. App.1983).

## II. DISCUSSION

1. *Lack of opportunity to meet with the Jurisdictional Review Committee prior to its tentative recommendation.*

■ Free first alleges that he was not allowed to be present at the initial meeting of the NICI Jurisdictional Review Committee at which the committee tentatively decided to recommend that jurisdiction be relinquished. This, he alleges, denied him an opportunity for a fair proceeding because the committee had already reached a decision before hearing from Free.

We recently addressed this same issue in a similar case, *Bradford v. State,* 124 Idaho 788, 864 P.2d 626 (Ct.App.1993), where we stated:

In *Wolfe* the Supreme Court held that inmates are entitled to comment upon or rebut the information relied upon, or the recommendation made by, the committee. However, *Wolfe* does not mandate that the inmate be present during the entire process by which a decision is reached by the committee. Although the initial meeting of the NICI committee is often referred to as a "hearing," it is in fact merely a conference where the committee reviews the inmate's record, considers staff evaluations, and develops a tentative recommendation as to whether the inmate should be placed on probation. An inmate does not have a right to be present during this meeting. So long as the inmate is provided the information upon which the committee bases its tentative decision, the committee does not rely upon secret information and the inmate is thereafter given an opportunity to present rebuttal evidence to the committee, the due process standards mandated by *Wolfe* have been met. [Citations omitted.]

That analysis is applicable in the instant case. Although Free was not allowed to be present at the initial conference of the Juris-

dictional Review Committee, he was informed of the committee's preliminary conclusion and afforded a hearing at which he could comment upon or rebut the recommendation. Accordingly, we find no error in the district court's denial of Free's application on this ground.

2. *Lack of a complete statement of the reasons for the committee's preliminary decision.*

■ Next, Free contends that he was given an "incomplete, incoherent, misleading" statement of the committee's reasons for its tentative recommendation. The district court found that Free was given adequate notice of the substance of the matters to be considered. This finding is supported by substantial, competent evidence.

At the initial meeting on February 27, 1989 between Free and the committee chairman, Free was given a form which advised him of the matters to be discussed at his rebuttal hearing the following day. A handwritten portion of the form advised Free that the following matters would be considered at the hearing:

> Staff evaluations in regard to institutional [sic] were positive although noted a "poor me" attitude and another was skeptical concerning reoffense. The psychological evaluation was very negative regarding amenability to treatment. Based on the directive that sex offenders cannot be released on probation the [sic] recommends that the court drop jurisdiction.

Free asserts that the obvious omission of certain words in this handwritten form made the statement incomprehensible and prejudiced his ability to prepare a rebuttal. We disagree. While certainly not a model of clarity, the form made Free aware of the basic substance of the matters that were of concern to the committee and would be considered at his rebuttal hearing. As discussed below, Free was also allowed to read the staff evaluations (though not the psychological evaluation) referenced in the report and thereby learn specifically how those evaluations raised concerns about his attitude and his potential for reoffense. Based upon that information, Free could formulate comments

and a rebuttal to the basis for the committee's decision. Therefore, we agree with the district court's conclusion that there was no denial of due process stemming from the omissions in the handwritten explanation of the matters to be considered at the hearing.

3. *Alleged denial of access to staff evaluations.*

■ Free further asserts that he was not allowed to review the staff evaluations considered by the committee and, therefore, had no opportunity to rebut them. The district court found to the contrary, and this finding is supported by substantial evidence. Terry Turner, chairman of the Jurisdictional Review Committee, testified that in addition to being given the form referenced above Free was also allowed to read the actual staff evaluations. Free denied that he was provided any of the staff evaluations. The evidence on this issue was in dispute, and it was the district court's prerogative, as the finder of fact, to attribute greater credibility to Turner than to Free. We find no clear error in this finding and, therefore, affirm.

4. *Denial of access to psychological report.*

■ Free also complains that he was not allowed to review the report of his psychological evaluation even though this report, prepared by a staff psychologist, was a part of the evidence upon which the committee relied in deciding to recommend against probation for Free. The state acknowledges that it is the policy of NICI not to allow inmates to review the psychological reports even though they are an important part of the evidence considered by the committee. Turner testified that the psychological evaluations are not provided to inmates because the evaluations are prepared for professional use only and because the institution is concerned that some inmates may become destructive or suicidal if they see the psychological reports.

Free argues that it was a deprivation of due process and a violation of the *Wolfe* standards to withhold from him evidence that could influence the committee.

We need not reach this issue in the present case for, even assuming that a deprivation of due process occurred, Free has not shown that he is entitled to relief. Free bears the burden not only to prove a constitutional violation, but also to demonstrate that he suffered some resulting prejudice that would entitle him to relief. *McDonald v. State, supra; Bradford v. State, supra.* To demonstrate prejudice from being denied access to the psychological evaluation, Free must indicate what he would or could have done to rebut the report. Free asserts that he would have obtained an independent psychological evaluation to counter the report. However, it is well-established that an inmate has no right to present such independent expert testimony in jurisdiction retention hearings. *State v. Hall,* 112 Idaho 925, 929, 736 P.2d 1379, 1383 (Ct.App.1987). Although Free obtained access to the psychological evaluation prior to the trial in this case, he did not place it in evidence, so we cannot ascertain whether it contains statements that Mr. Free himself might have been able to rebut or counter even without the aid of his own expert witness. Further, Free has not identified any inaccuracies in the report. Thus, he has shown no prejudice arising from the NICI committee's concealment of the report. In the absence of a showing of prejudice, an application for post-conviction relief is properly denied.

### 5. Denial of right to call witnesses.

■ Free next contends that he was denied the right to call witnesses in his behalf. First, he asserts he was never informed of his right to call witnesses and, in fact, was told he could not present witnesses. Second, he asserts, that even if he had been informed of the right, he was prevented from exercising it because, immediately after being informed of the committee's preliminary decision against probation, he was placed in administrative segregation[1] and prevented from contacting potential witnesses. If Free's contentions are true, a denial of due process occurred. A failure to inform an inmate of the right to call witnesses or misin-

forming him that such right does not exist would clearly be violative of *Wolfe's* standards. Likewise, denying the inmate any means to communicate with potential witnesses either directly or indirectly through a staff representative, is an impermissible infringement of due process rights. *Bradford v. State, supra.*

The trial court made no specific findings as to whether Free was informed of his right to call witnesses or was offered some means of communicating with potential witnesses. Remand for resolution of these factual issues is unnecessary, however, because even assuming that Free was denied the ability to call witnesses as alleged, he has demonstrated no resulting prejudice and, therefore, is not entitled to relief.

■ Prejudice will not be assumed from a denial of the right to call witnesses at a jurisdictional review hearing. Rather, the inmate must make some showing that the witnesses' testimony would have been material, favorable to the inmate's evaluation, and not merely cumulative. *McDonald v. State, supra; State v. Hansloven,* 116 Idaho 266, 268, 775 P.2d 158, 160 (Ct.App.1989). Free has not made that showing. At the trial in this case, Free testified that, had he been afforded the opportunity, he would have called as witnesses the two correctional officers who had submitted to the committee written reports favorable to Free. However, Free did not indicate that the witnesses would have testified to any information that was not merely repetitive of that presented in their written statements. Free also testified that he would have called other unidentified inmates from the NICI populace who would have testified in his favor. Free fails to specify who these witnesses are, what the substance of their testimony would have been, or how the testimony would have been material or favorable to his evaluation. Therefore, even assuming an unconstitutional denial of Free's right to call witnesses on his behalf, he has not demonstrated any resulting prejudice, and he is not entitled to relief.

1. NICI policy dictates that, for security reasons, inmates who receive an adverse tentative recommendation from the Jurisdictional Review Committee will be placed in administrative segregation to prevent escape from this minimum security facility.

### 6. *Denial of writing materials*

 Finally, Free asserts that he specifically requested writing materials while he was held in administrative segregation, but that his request was ignored. On this issue the district court found that Free was not provided with pen or pencil and paper while in segregation. Free contends this denial of access to writing materials was a deprivation of due process and that he was prejudiced by the inability to prepare either a written rebuttal statement or notes for his oral rebuttal statement.

We find merit in Free's argument. By preventing Free from preparing a written rebuttal statement, the state effectively deprived Free of access to the courts. This is so because an inmate on retained jurisdiction has no right to a judicial hearing before the sentencing court decides whether to modify the sentence, place the inmate on probation or order execution of the original sentence. *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977). The rebuttal hearing at the correctional institution is generally the inmate's only opportunity for presentation of evidence or argument to attempt to influence the court's ultimate decision. After that hearing, the committee's report and any rebuttal statement from the inmate are sent to the court, which ordinarily renders a decision without taking further evidence or argument.[2]

If an inmate has presented any evidence or a rebuttal statement, *Wolfe* mandates that this information must be included with the report sent back to the sentencing court. *Wolfe*, 99 Idaho at 389, 582 P.2d at 735. Therefore, when the inmate has submitted a written rebuttal statement to the committee, the sentencing court receives the inmate's own presentation. However, if the inmate gives only an oral statement at the hearing, the inmate's own words never reach the judge. No recording is made of the inmate's statement, and no verbatim transcript is prepared. Rather, a committee member prepares a summary which paraphrases the in-

mate's oral statement. At best, this procedure creates potential for omissions, misinterpretations and simplifications; at worst, it presents an opportunity for distortion and manipulation.[3] This risk is not insignificant given that alleged unfairness or inadequacy of the committee's own procedures or alleged bias on the part of the scrivener committee member may be a subject of the inmate's discourse that is being summarized. Free specifically asserts that his oral statement was mischaracterized in the summary sent to the judge.

In light of these procedures utilized in NICI jurisdiction retention proceedings, the state's refusal of an inmate's request for writing material to prepare for the rebuttal hearing effectively cuts off the inmate's only avenue of direct and unfiltered communication with the sentencing court.

The United States Supreme Court has held that the constitutional right of access to the courts, at a minimum, necessitates the provision of writing tools:

> It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.... This is not to say that economic factors may not be considered, for example in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial.

*Bounds v. Smith*, 430 U.S. 817, 824–25, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72, 80–81 (1977) (emphasis added). *See also, Tuggle v. Barksdale*, 641 F.Supp. 34, 38 (W.D.Tenn. 1985) (prison officials required to provide access to typewriters); *Wade v. Kane*, 448 F.Supp. 678, 685 (E.D.Penn.1978) (prison inmates entitled to writing materials); *Ahrens v. Thomas*, 434 F.Supp. 873, 899 (W.D.Mo. 1977) (indigent inmates entitled to writing materials at state expense). This right of access to the courts originates in the Fourteenth Amendment's due process clause.

---

2. The inmate may file a motion for a hearing before the sentencing court prior to relinquishment of jurisdiction, but it is within the court's discretion to refuse such a hearing.

3. Justice Bistline referred to this process as "the ultimate in trickle-down trumpery." *State v. White*, 107 Idaho 941, 943, 694 P.2d 890, 892 (1985) (Bistline, J., dissenting.)

*Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974).

We conclude that Free's right to due process was violated by the state's denial of his request for writing materials, and that Free was prejudiced because the state's conduct deprived him of any opportunity for direct communication with the court on the questions as to whether probation was appropriate and whether Free's sentence should be modified.

 In holding that inmates have a right of access to the court at this stage, we do not in any way imply that this right encompasses the full panoply of privileges attached to the right at other stages of the criminal process. Thus, in jurisdictional review proceedings, inmates are not entitled to law library access, *State v. Boswell,* 118 Idaho 725, 729, 800 P.2d 121, 125 (Ct.App.1990), nor to inmate law clerk assistance, *State v. Hansloven,* 116 Idaho at 268, 775 P.2d at 160 (Ct.App.1989), nor to the assistance of counsel, *State v. Bell,* 119 Idaho 1015, 1017, 812 P.2d 322, 325 (Ct.App. 1991).

In addition to preventing his access to the court, Free asserts that the lack of pen and paper infringed his due process rights by impairing his ability to prepare even an oral rebuttal statement. Again, we agree. The lack of writing materials to help an inmate organize his thoughts and to make an outline of his presentation inherently hampers his ability to present an orderly and complete oral statement. Even the most experienced attorneys, practiced in the art of oral advocacy, would not think of appearing before a judicial body for presentation of evidence or argument without notes of points to be covered. If such written aids are essential to highly educated and seasoned attorneys, we think it self-evident that they are even more critical to inmates in Mr. Free's circumstances who are attempting to prepare for what they may view as the most important oral presentation they will ever make. We conclude that such basic tools as a pen or pencil and paper are so fundamental to a fair opportunity to make an effective oral rebuttal statement that denial of those tools is inherently prejudicial and a deprivation of due process.

Our Supreme Court noted in *Wolfe* that both the prisoner and the sentencing judge need the benefit of a fair procedure designed to paint an accurate picture of the prisoner's potential for rehabilitation. 99 Idaho at 387, 582 P.2d at 733. The due process mandated by *Wolfe* is intended to help insure that the jurisdictional review report is as complete as possible and to guarantee basic fairness for both the prisoner and the sentencing judge. 99 Idaho at 389, 582 P.2d at 735. We conclude that that purpose was not accomplished in this case. We hold that Free was denied the due process assured by *Wolfe* and that he has been prejudiced by denial of writing tools minimally necessary to prepare for his rebuttal hearing. Therefore, the district court's order denying Free's application for post-conviction relief is reversed.

### III. REMEDY

Having found that Free was denied due process and is entitled to relief, we must fashion a remedy for the procedural error at NICI, which occurred in 1989.

The district court's order relinquishing jurisdiction entered on March 15, 1989, must be reconsidered because it was, at least in part, based upon constitutionally flawed proceedings at NICI. Free is entitled to a new hearing in which the procedural protections of *Wolfe* will be observed. It is obvious, however, that any attempt to conduct a new hearing at NICI to redetermine Free's suitability for probation or modification of sentence as of 1989 would be both impossible and pointless. Both Free's interest in rehabilitation and the state's interest in protecting society dictate that the pertinent inquiry today is whether Free is *now* a fit candidate for probation or sentence modification. Thus, we conclude that the appropriate remedy in this case is a new hearing before the district court at which Free's current institutional behavior, rehabilitation progress and potential, and fitness for probation may be examined. If, following that hearing, the district court concludes that Free should be placed on probation or that his sentence should be otherwise modified, the court shall vacate the order of March 15, 1989, relin-

quishing jurisdiction and shall enter such substitute order as the court deems appropriate.

The order of the district court denying Free's application for post-conviction relief is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.

WALTERS, C.J., and PERRY, J., concur.